RECEIVED
FEB 2 4 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| SHAWN A. FRANCIS | * | CIVIL ACTION NO. 04-2277 |
| VERSUS | * | MAGISTRATE JUDGE HILL |
| COMMISSIONER OF SOCIAL SECURITY | * | BY CONSENT OF THE PARTIES |

### REASONS FOR JUDGMENT

The undersigned was referred this social security appeal by consent of the parties. For the reasons set forth below, the Commissioner's decision is **REVERSED,** and claimant is awarded benefits commencing May 3, 2000.

### I. Background

The claimant, Shawn Francis ("Francis"), age 33, filed applications for disability insurance benefits and supplemental security income on August 25, 2000, alleging disability since May 3, 2000, due to a herniated nucleus pulposus at L4-5, status-post radical diskectomy and fusion of the lumbar spine, and pain. He had a tenth-grade education,[1] and past work experience as a construction worker, dishwasher/busboy, motel maintenance worker, baker, cashier, offshore galley hand, and 18-wheeler truck driver.

---

[1] At the hearing, Francis testified that he had a sixth-grade education. (Tr. 34).

Francis was treated by Dr. Olga Reavill for right hip and leg pain. An MRI dated May 10, 2000, showed a prominent right lateral focal disc herniation at L4-5 with probable L5 nerve root compromise. Dr. Reavill prescribed an epidural and physical therapy.

On July 11, 2000, Francis stated that he was not any better. He had not been going to physical therapy because he could not afford it. Dr. Reavill referred him to an orthopedist.

Dr. Morgan Lorio saw Francis on August 11, 2000, for complaints of leg and back pain with right ankle numbness. His diagnosis was a right L4/L5 extruded disc herniation with nerve root compression/radiculopathy. He recommended a right L4/L5 discectomy, which was performed on September 28, 2000.

On December 7, 2000, Dr. Leonard Cheramie performed a Residual Functional Capacity Assessment. He determined that Francis was able to lift 20 pounds occasionally and 10 pounds frequently, stand/walk and sit about 6 hours in an 8-hour workday, and had unlimited push/pull ability. He opined that claimant could perform all postural activities occasionally, and was unlimited environmentally. Dr. Cheramie noted that claimant's condition was severe enough to cause significant limitations of activities of daily living, and that his statements were therefore considered to be credible.

On March 21, 2001, Dr. Lorio wrote that Francis remained "totally unable to work" at that time. (Tr. 209). He stated that further determination of claimant's work status would be made at one-year postoperatively.

On March 26, 2001, Francis complained of abdominal and thumb scarring. On examination, he had hypertrophic scar on the right thumb from a prior surgery and keloid formation at the left paramedian incision. Dr. Lorio performed keloid excisions on claimant's anterior abdomen and right thumb on April 3, 2001.

On June 8, 2001, Francis' spine was orthopaedically stable. He was taking Tylenol for pain. Dr. Lorio instructed him to follow up with doctors in Lafayette if he had worsening of pain, and discharged Francis from his care.

Francis was seen by Dr. Victoria Silas on October 8, 2001, for complaints of severe lower back pain and right foot numbness. On examination, he was quite stiff with all movements, including getting up out of a chair, walking, and getting on and off the exam table. He indicated that he was unable to walk on his toes. He walked with a cane. He had tenderness to palpation over the area of the fusion. He seemed to have some spasm in the muscles on the right around the area of the fusion.

Francis had only about 20 degrees of flexion at the waist. Straight leg raising was positive at 20 to 25 degrees for back pain. Lower extremities strength seemed to be 5/5, but with consistent breakaway to resistance. Light touch sensation was

globally diminished in the right lower extremity. Lower extremity reflexes were 2 bilaterally, with downgoing Babinski reflexes. Lumbar spine x-rays demonstrated good fusion mass.

Dr. Silas' impression was status-post anterior and posterior fusion at L4-5, with continued low back pain. She referred claimant to Dr. Norman Chutkan for further evaluation. Dr. Silas noted that claimant was unable to work at that time.

Francis was evaluated by Dr. Chutkan on January 15, 2002. He complained of severe back pain, right leg pain, and numbness, which was relieved only by medication. On examination, he had marked restriction of motion in all planes because of pain. Static testing revealed normal strength. Straight leg raises were negative on the left, and equivocal on the right. He had no obvious motor deficits. Sensation and reflexes were intact.

X-rays showed a solid L4-5 interbody and instrumented posterior lateral fusion, with a transitional 5-1 level. Dr. Chutkan was not sure what was causing Francis' pain, but thought essentially that it was a failed back syndrome from surgery. He did not think that any further surgery was indicated, and recommended pain management and physical therapy. He opined that claimant was disabled that point.

At the hearing on February 27, 2002, Francis testified that he had more back pain than he did prior to surgery. He stated that his leg pain had eased up, but he still

had numbness in his leg and right foot from 30 minutes to three to four hours and a "shocking feeling" in the right leg once or twice a week. (Tr. 46). He reported that he had to sit for 15 to 20 minutes after a shock.

As to activities, claimant reported that his wife had to help him bathe and dress himself. He stated that he attended church once or twice a month.

Regarding medication, Francis complained that it always put him to sleep. He stated that he had been taking Lortab, but he had been unable to refill it because his doctor had left town. He also had a prescription for Feldene. He reported that he had been receiving physical therapy three times a week up until a week before the hearing.

As to limitations, Francis testified that the heaviest thing he could lift was a plate. He stated that he could sometimes sit for one to two hours. He said that he could stand for 30 minutes. He reported that he could walk for half a block.

Gordon Landry testified as a vocational rehabilitation expert at the hearing. The ALJ posed a hypothetical in which he asked the expert to assume a 29-year-old claimant with a sixth-grade education and the same work experience as claimant; who had the ability to lift 10 pounds, sit for two hours at a time, stand for 30 minutes at a time, and walk one block; who was restricted from any work requiring bending, stooping, or squatting; who was restricted from work requiring highly technical

reading or mathematical skills, and who could alternate sitting and standing at will at least six hours out of an eight-hour day, excluding morning, afternoon, and lunch breaks. In response, Mr. Landry testified that such claimant could not do any of his past work, but could work as a sedentary cashier, of which there were 11,700 jobs statewide and 600,000 nationally.

## Law and Opinion

On appeal, claimant argues that the ALJ erred: (1) in finding medical improvement, and (2) in failing to identify substantial available work. Because I find that the ALJ erred in finding that claimant's condition had improved, I order that the Commissioner's decision is **REVERSED** and that the claimant is awarded benefits.

The record reflects that all three of the physicians who personally evaluated Francis post-surgery determined that he was disabled. On March 21, 2001, his treating orthopedist, Dr. Lorio, determined that Francis remained "totally unable to work at this time." (Tr. 209). He stated that a further determination of Francis' work status would be made at one-year postoperatively.

A few months later, Francis saw Dr. Silas for continued complaints of severe lower back pain. She determined that claimant was unable to work at that time, and referred him to Dr. Chutkan for further evaluation. When Dr. Chutkan examined claimant on January 15, 2002, his impression was failed back syndrome. He opined

that as far as Francis' work status, "I consider him disabled at this point." (Tr. 215).

Despite these findings, the ALJ determined that Francis had medically improved. In doing so, he utterly ignored the treating physicians' opinions that claimant was disabled. The expert opinion of a treating physician as to the existence of a disability is binding on the fact-finder *"unless contradicted by substantial evidence to the contrary."* (emphasis added). *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (quoting *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978)); *see also* 20 C.F.R. § 404.1527(d)(2). Here, the ALJ has cited no substantial evidence to contradict the findings of Francis' three examining physicians, and a full review of this record by the undersigned fails to disclose any such substantial evidence.

The Commissioner concedes that the ALJ committed legal error by not applying the medical improvement standard. (rec. doc. 26, pp. 2-3). She urges that this case be remanded, rather than awarding claimant benefits. However, based on the opinions from *three* of his treating physicians, Francis was disabled. (emphasis added). Thus, it is not necessary to remand this case for further proceedings.

Because the ALJ erred in finding medical improvement, it is ordered that the Commissioner's decision is **REVERSED**, and the claimant is awarded appropriate benefits commencing May 3, 2000.

Signed this 23 day of February, 2006, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE